**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| EMILIA ESPINOZA, as Personal | § | |
| Representative and Administrator of the | § | |
| Estate of JOSE ANTONIO ESPINOZA, | § | |
|     *Plaintiff,* | § | CIVIL ACTION NO. 5:16-CV-00016-C |
| v. | § | |
| | § | |
| CITY OF LEVELLAND, RAOL ORTEGA | § | |
| LOPEZ, JORDAN KASE DONAHUE, | § | |
| JUSTIN TY LAND, CHIEF OF POLICE | § | |
| TONY COWAN, | § | |
|     *Defendants.* | § | |

## DEFENDANTS RAUL ORTEGA LOPEZ, JORDAN KASE DONAHUE, JUSTIN TY LAND AND CHIEF OF POLICE TONEY COWAN'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY

Respectfully submitted,

MATT D. MATZNER
Texas Bar No. 00797022
TRACI D. SIEBENLIST
Texas Bar No. 24070517
CRENSHAW, DUPREE & MILAM, L.L.P.
Post Office Box 64479
Lubbock, Texas 79424
Telephone: (806) 762-5281
Facsimile: (806) 762-3510
mmatzner@cdmlaw.com
tsiebenlist@cdmlaw.com
***Counsel for Defendants***

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... ii

Table of Authorities ....................................................................................................... iii

I. Summary ..................................................................................................................... 1

II. Background ................................................................................................................ 2

III. Qualified Immunity Standard ................................................................................. 7

IV. Argument and Authorities ..................................................................................... 12

  A. The Individual Officers Are Entitled to Qualified Immunity on All Claims Asserted
     by the Plaintiff .................................................................................................... 12

    1. The Court Must Disregard the Plaintiff's Version of the Facts in Light of the
       Clear Audio and Video Evidence to the Contrary ........................................ 12

    2. The Excessive Use of Force Claim Fails .................................................... 14

        A. No Constitutional Violation Occurred For the Alleged
           Excessive Use of Force ...................................................................... 14

        B. Actions Taken By Officers Donahue and Lopez Were
           Reasonable in Light of Clearly Established Law ............................. 16

    3. The Plaintiff's Supervisory Liability Claims Fail ....................................... 19

        A. No Violations for The Failure to Train or Supervise were
           committed by Police Chief Toney Cowan or Officer Land ............................ 20

        B. Adequate Supervision Occurred Through a Chain of Command
           Structure ............................................................................................ 22

        C. Even if the Court Determines a Constitutional Violation
           Occurred for the Failure to Train or Supervise, Both Chief
           Cowan and Officer Land Were Reasonable ..................................... 23

V. Conclusion ............................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*AHF Cmty. Dev., LLC v. City of Dallas.*,
  633 F.Supp.2d 287 (N.D. Tex. 2009) ........................................................... 11

*Anderson v. Creighton*,
  483 U.S. 635, 107 S. Ct. 3034 (1987) ............................................. 8, 9, 10, 11

*Beck v. Tex. State Bd. of Dental Exam'rs*,
  204 F.3d 629 (5th Cir. 2000) ........................................................................ 8

*Benavides v. County of Wilson*,
  955 F.2d 968 (5th Cir. 1992) ................................................................. 20, 21

*Burge v. St. Tammany Parish*,
  336 F.3d 363 (5th Cir. 2003) ....................................................................... 20

*Cole v. Carson*,
  802 F.3d 752 (5th Cir. 2015) ....................................................................... 14

*Collier v. Montgomery*,
  569 F.3d 214 (5th Cir. 2009) ........................................................................ 8

*Freeman v. Gore*,
  483 F.3d 404 (5th Cir. 2007) ........................................................................ 8

*Gonzales v. Dallas County, Tex.*,
  249 F.3d 406 (5th Cir. 2001) ....................................................................... 10

*Goodman v. Harris County*,
  571 F.3d 388 (5th Cir. 2009) ....................................................................... 20

*Goodson v. City of Corpus Christi*,
  202 F.3d 730 (5th Cir. 2000) ....................................................................... 11

*Groh v. Ramirez*,
  540 U.S. 551, 124 S. Ct. 1284 (2004) ............................................................ 8

*Hare v. City of Corinth, Miss.*,
  135 F.3d 320 (5th Cir. 1998) ....................................................................... 10

*Harlow v. Fitzgerald*,
  457 U.S. 800, 102 S. Ct. 2727 (1982) ............................................................ 9

*Hernandez v. Tex. Dep't of Protective & Reg. Servs.*,
  380 F.3d 872 (5th Cir. 2004) ........................................................................ 8

408317v.1

*Kitchen v. Dallas County, Tex.*,
   759 F.3d 468 (5th Cir. 2014) ................................................................. 9

*Lukan v. North Forest I.S.D.*,
   183 F.3d 342 (5th Cir. 1999) ................................................................. 11

*Lytle v. Bexar Cnty., Tex.*,
   560 F.3d 404 (5th Cir. 2009) ............................................................. 10, 11

*Mace v. City of Palestine*,
   333 F.3d 621 (5th Cir. 2003) ................................................................. 14

*Malley v. Briggs*,
   475 U.S. 335, 106 S. Ct. 1092 (1986) .................................................... 8, 10

*Marksmeier v. Davie*,
   No. 8:09-cv-30, 2009 WL 2396845 (D. Neb. July 30, 2009) ....................... 13

*McClendon v. City of Columbia*,
   305 F.3d 314 (5th Cir. 2002) ................................................................. 8

*Mitchell v. Forsythe*,
   472 U.S. 511, 105 S. Ct. 2806 (1985) ..................................................... 9

*Mullenix v. Luna*,
   136 S.Ct. 305 (2015) ....................................................................... 9, 16

*Ontiveros v. City of Rosenberg, Tex.*,
   564 F.3d 379 (5th Cir. 2009) ................................................................. 14

*Petta v. Rivera*,
   143 F.3d 895 (5th Cir. 1998) ................................................................. 7

*Pierce v. Smith*,
   117 F.3d 866 (5th Cir.1997) ................................................................. 11

*Poole v. City of Shreveport*,
   691 F.3d  (5th Cir. 2012) .................................................................... 12

*Porter v. Epps*,
   659 F.3d 440 (5th Cir. 2011) ................................................................. 20

*Saucier v. Katz*,
   533 U.S. 194, 121 S. Ct. 2151 (2001) .......................................... 7, 10, 11, 12

*Scott v. Harris*,
   550 U.S. 372 (2007) ...................................................................... 12, 13

*Snow v. City of El Paso, Tex.*,
   501 F. Supp. 2d 826 (W.D. Tex. 2006) ................................................................................. 20

*Thompson v. Upshur*,
   245 F.3d 447 (5th Cir. 2001) ................................................................................. 8, 9, 10, 11

*Toner v. Village of Elkton*,
   No. 11-10835, 2012 WL 4748057 (E.D. MI Oct. 4, 2012) .................................................... 13

*White v. Taylor*,
   959 F.2d 539 (5th Cir. 1992) .................................................................................................. 9, 10

*Widder v. Texas A&M University-Corpus Christi*,
   No. 2:11-cv-282, 2012 WL 3776480 (S.D. Tex. July 31, 2012) ............................................ 13

*Zarnow v. City of Wichita Falls, Tex.*,
   500 F.3d 401 (5th Cir. 2007) ................................................................................................... 10

## STATUTES

TEX. PEN. CODE § 9.32 ................................................................................................................ 17

TEX. PEN. CODE § 9.51 ................................................................................................................ 17

42 U.S.C. § 1983 ............................................................................................................... *..passim*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| EMILIA ESPINOZA, as Personal | § | |
| Representative and Administrator of the | § | |
| Estate of JOSE ANTONIO ESPINOZA, | § | |
|     *Plaintiff,* | § | CIVIL ACTION NO. 5:16-CV-00016-C |
| v. | § | |
| | § | |
| LEVELLAND POLICE DEPARTMENT, | § | |
| CITY OF LEVELLAND, RAOL ORTEGA | § | |
| LOPEZ, JORDAN KASE DONAHUE, | § | |
| JUSTIN TY LAND, CHIEF OF POLICE | § | |
| TONY COWAN, CITY AND | § | |
| COUNTY OF LEVELLAND, | § | |
|     *Defendants.* | | |

## DEFENDANTS RAUL ORTEGA LOPEZ, JORDAN KASE DONAHUE, JUSTIN TY LAND AND CHIEF OF POLICE TONEY COWAN'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY

TO THE HONORABLE UNITED STATES DISTRICT JUDGE, SAM R. CUMMINGS:

COME NOW Defendants Raul Ortega Lopez, Jordan Kase Donahue, Justin Ty Land, and Chief of Police Toney Cowan and file their Brief in Support of their Motion for Summary Judgment Based on the Issue of Qualified Immunity, and in support thereof would show the Court as follows:

### I. SUMMARY

The individual Defendants are entitled to summary judgment on the basis of qualified immunity on Plaintiff's Fifth Amendment claim because the Plaintiff does not allege any facts or have any evidence to support such a claim.

Officers Land, Lopez, and Donahue are entitled to summary judgment on the basis of qualified immunity to Plaintiff's 42 U.S.C. § 1983 claim for the alleged use of excessive force because the evidence does not create a genuine issue of material fact supporting the essential

elements of the claim. The Plaintiff has no evidence, or insufficient evidence, to show that Officers Land, Lopez or Donahue used excessive force in their interactions with Jose Espinoza because the evidence demonstrates that the amount of force used by Officers Lopez and Donahue was not excessive and was reasonable in light of the totality of the circumstances, including the threat of deadly force posed by Jose Espinoza, faced by Officers Lopez and Donahue. Further, Officer Land is entitled to summary judgment on the basis of qualified immunity for the Plaintiff's excessive force claim because he did not employ any use of force toward Jose Espinoza.

Police Chief Toney Cowan and Officer Land are entitled to summary judgment on the issue of supervisory liability under § 1983 on Plaintiff's claims for the failure to train and supervise because the evidence does not create a genuine issue of material fact supporting the essential elements of the claim. The Plaintiff has no evidence, or insufficient evidence, to show that the training or supervision of officers within the City of Levelland Police Department was deficient in any way. The Plaintiff also has no evidence, or insufficient evidence, to show that either Police Chief Toney Cowan or Officer Land was aware of any prior complaints or incidents regarding the use of force by any officer within the City of Levelland Police Department for purposes of establishing deliberate indifference.

Pursuant to the Court's order dated June 22, 2016 (Doc. 33), the individual Defendants file this Motion for Summary Judgment on the Issue of Qualified Immunity.

## II. BACKGROUND

This lawsuit arises from an officer involved shooting in Levelland, Texas, following receipt of an emergency call by Emilia Espinoza. *See* App. Ex. O (911 call). On January 23, 2015, at approximately 7:00 a.m., the dispatch unit for the City of Levelland Police Department received a call from an unidentified woman frantically screaming on the line. *See* App. Ex. D at 317-19

(Donahue Declaration); *see* App. Ex. E at 321-22 (Lopez Declaration).  Emilia Espinoza was so hysterical and frantic during the call that no details were received regarding the reason for the call or her location.  *See* App. Ex. O (911 Call).   Officers Donahue, Land and Lopez quickly left the station awaiting receipt of the location of the call from pinging performed by dispatch.  *See* App. Ex. D at 317-19 (Donahue Declaration); *see* App. Ex. E at 321-22 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration).  Officer Donahue was most familiar with the location because he used to reside close to the address and was the first to arrive at the scene.  *See* App. Ex. D at 317-20 (Donahue Declaration).  Officer Lopez arrived next, and Officer Land arrived last.  *See* App. Ex. E at 321-22 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration).  On the morning the call came in, winter weather had affected the area.  *See* App. Ex. E at 321-22 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration).  The streets contained snow and ice, slowing the response time of officers to a degree.  However, all three officers arrived at the home within five minutes of leaving the station.

The video and audio captured through the patrol car camera and microphone of Officer Lopez indicate the following events transpired:

- Officer Lopez arrives at the scene shortly after 7:04 a.m. *See* App. Ex. P at 0:47 (Patrol Car Video).
- Upon Officer Lopez arriving, another patrol vehicle belonging to Officer Donahue is visible.  *See* App. Ex. P at 0:47 (Patrol Car Video).
- A woman, later identified as Emilia Espinoza, is seen crossing in front of Officer Lopez's camera from left to right, moving toward the home where the shooting would later occur.  *See* App. Ex. P at 0:48 (Patrol Car Video).
- As Emilia Espinoza passes in front of Officer Donahue, he can be seen drawing his weapon *See* App. Ex. P at 0:54 (Patrol Car Video).
- The audio of the recording begins at approximately the 1:00 minute mark, with officers instructing an individual, later identified as Jose Espinoza, to "put it down."  Officers Donahue and Lopez are seen walking toward the house as they continue to give verbal instructions to the male individual who was standing on the porch steps.  *See* App. Ex. P at 1:00 (Patrol Car Video).  The audio reflects the situation the officers faced—frantic, hectic instructions intertwined with screams from the female.

- The officers provide verbal instructions to Emilia Espinoza to get out of the way. *See* App. Ex. P at 1:10 (Patrol Car Video).
- Officer Land is seen arriving with his K-9 unit at approximately 7:05 a.m. *See* App. Ex. P at 1:25 (Patrol Car Video).
- Multiple loud and clear instructions to get out of the way, put it down, put down the knife are repeated by the officers in both English and Spanish. A woman is also heard screaming in the background.
- After repeated and numerous attempts at verbal instruction, shots are fired. *See* App. Ex. P (Patrol Car Video at 1:39).
- Officer Lopez is seen escorting Emilia Espinoza to his patrol car. *See* App. Ex. P (Patrol Car Video at 2:00). Officer Land returns his K-9 unit to his vehicle and is then seen approaching the subject with Officer Donahue, who has held cover until Officer Land was able to assist with back up.
- The entire interaction is over in approximately 3 minutes.
- After the shooting, Jose Espinoza was placed in restraints, emergency services were called, and Officers Land and Donahue searched the home for other victims.

Declarations of the officers support the events as seen and heard on the video. *See* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration). Further, the declarations of the officers indicate that the officers responded to the emergency call with no knowledge of events transpiring or individuals involved other than a female called in hysterical, and screaming. *See* App. Ex. D at 317-18 (Donahue Declaration); *see* App. Ex. E at 321-22 (Lopez Declaration); *see* App. Ex. F at 324-25 (Land Declaration). Once arriving at the scene, the officers were faced with the same hysterical woman and a male individual standing in the doorway of a home. *See* App. Ex. D at 317-19 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration). Jose Espinoza did not say anything upon arrival of the officers. However, standing in the lit door frame of the front entry to the home, officers could see he was holding a knife and had blood on both his person and his clothing. *See* App. Ex. D at 317-18 (Donahue Declaration); *see* App. Ex. E at 321-22 (Lopez Declaration).

Emilia Espinoza ran towards the man standing in the doorway during the commands of the officers to put down the knife. *See* App. Ex. D at 317-19 (Donahue Declaration); *see* App. Ex. E

at 321-23 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration).   While it was unclear exactly what she was trying to do, the struggle that ensued between Emilia Espinoza and Jose Espinoza appeared to officers as either her attempt to disarm him or his attempt to stab her with the knife.   *See* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration).   Officers continued the onslaught of verbal commands during this struggle, with Jose Espinoza failing to respond in any manner.   *See* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration). During this time Officer Land had control of his K-9 unit, but was unable to deploy the K-9 due to the frenzied situation with officers yelling commands and the struggle between Jose Espinoza and Emilia Espinoza.   *See* App. Ex. F at 324-26 (Land Declaration).   Because of the chaotic circumstances, deploying the dog at that time would have posed a severe risk to not only Emilia Espinoza, but to the other officers who were in close proximity to Jose Espinoza.   *See* App. Ex. F at 324-25 (Land Declaration).   Officers Lopez and Donahue were also unable to take any action during this struggle as Jose Espinoza and Emilia Espinoza were very close in proximity, and therefore any attempt to secure Jose Espinoza could have resulted in harm to Emilia Espinoza.   *See* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration).

Eventually, Emilia Espinoza was able to break free from the struggle with Jose Espinoza. *See* App. Ex. D at 318 (Donahue Declaration); *see* App. Ex. E at 322 (Lopez Declaration).   Officer Lopez grabbed her as soon as she was free from the struggle and pulled her behind him out of direct contact with Jose Espinoza.   *See* App. Ex. E at 322 (Lopez Declaration).   Jose Espinoza continued to stand in the doorway holding the knife and continued to not respond in any manner to the repeated commands of the Officers.   *See* App. Ex. D at 318 (Donahue Declaration); *see* App. Ex. E at 322 (Lopez Declaration).   At this point, Jose Espinoza was standing on top of the stairs to

the entry of the home, with Officer Donahue standing on the ground below him, no more than five feet away.  *See* App. Ex. D at 318 (Donahue Declaration); *see* App. Ex. E at 322 (Lopez Declaration).   Officer Lopez was standing approximately four to five feet away from Jose Espinoza, with Emilia Espinoza behind him.  *See* App. Ex. E at 318-19 (Lopez Declaration).  Both had their weapons drawn and were continuing to issue verbal commands (in both English and Spanish) to Jose Espinoza.  *See* App. Ex. D at 318-19 (Donahue Declaration); *see* App. Ex. E at 322 (Lopez Declaration).  While standing on the porch after the struggle, Jose Espinoza locked his gaze on Officer Donahue.  Jose Espinoza did not acknowledge or look at any of the other officers who continued to provide verbal commands to drop the weapon.  *See* App. Ex. D at 318-19 (Donahue Declaration); *see* App. Ex. E at 322 (Lopez Declaration).  He also failed to acknowledge or respond to Emilia Espinoza during this time.

It was at this point that Jose Espinoza turned the knife in his hand, from the blade pointing out to a position where the blade was pointed down, raised it above his head, and made a lunging forward motion with his body, off of the steps toward Officer Donahue.  *See* App. Ex. D at 318-19 (Donahue Declaration); *see* App. Ex. E at 322-23 (Lopez Declaration).  Both Officers Lopez and Donahue believed the actions taken by Jose Espinoza to represent an imminent risk of serious bodily harm or death to Officer Donahue.  *See* App. Ex. D at 318-19 (Donahue Declaration); *see* App. Ex. E at 322-23 (Lopez Declaration).   Officer Lopez fired once to attempt to stop Jose Espinoza from attacking Officer Donahue.  *See* App. Ex. E at 322-23 (Lopez Declaration).  Officer Donahue fired six rounds while retreating backward to avoid contact with Jose Espinoza.  *See* App. Ex. E at 318-19 (Donahue Declaration).  Jose Espinoza fell forward into the snow in the yard after the shots were fired. At the time Officer Lopez fired, he believed that Jose Espinoza was moving to attack Officer Donahue from the higher position on the stairs with the knife.  *See* App. Ex. E at

322-23 (Lopez Declaration).  Officer Donahue shared the same feeling in observing the behavior

of the male following the lunging motion by Jose Espinoza.  *See* App. Ex. D at 318-19 (Donahue

Declaration).  After he rotated the knife in his hands and raised it, the movement Jose Espinoza

made toward Officer Donahue appeared to Officer Donahue as a lunging, attack motion toward

him with the knife.  *See* App. Ex. D at 317-19 (Donahue Declaration); *see* App. Ex. E at 321-23

(Lopez Declaration).  This action, combined with the focused attention with no facial or verbal

responses by Jose Espinoza toward him, lead Officer Donahue to the conclusion that Jose Espinoza

was attempting to attack him with his knife, causing Officer Donahue to fire his weapon in self-

defense.  *See* App. Ex. D at 317-19 (Donahue Declaration).

After the exchange of gun fire, Officer Lopez escorted Emilia Espinoza across the lawn

into his vehicle.  *See* App. Ex. E at 322-23 (Lopez Declaration).  Officer Land, who had been

maintaining cover with the K-9 unit, placed the K-9 in his car and returned to assist Officer

Donahue in securing Jose Espinoza and searching the home for other victims or suspects.  *See*

App. Ex. F at 325 (Land Declaration).  Emergency services were also called to assist with medical

attention for Jose Espinoza.  *See* App. Ex. D at 318-19 (Donahue Declaration).  Emergency

services arrived and transported Jose Espinoza to a hospital for treatment.  Jose Espinoza was

pronounced dead later that morning.

### III. QUALIFIED IMMUNITY STANDARD

Officials sued in their individual capacity for violations under 42 U.S.C. § 1983 may assert

a defense of qualified immunity. *See Petta v. Rivera*, 143 F.3d 895, 898 (5th Cir. 1998). The

doctrine of qualified immunity protects government officials by operating as an "an immunity

from suit rather than a mere defense to liability[.]"  *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct.

2151, 2156 (2001).  Qualified immunity is a defense that is intended to shield officials from civil

damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034 (1987).  Qualified immunity applies "regardless of whether the officer's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284 (2004).  The defense should protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 344 45, 106 S. Ct. 1092 (1986).

Where summary judgment is requested based on the defense of qualified immunity, the moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000). "It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." *Id*. "Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense") (en banc) (per curiam); *Thompson v. Upshur*, 245 F.3d 447, 456 (5th Cir. 2001).  To determine whether an governmental official who is a defendant is entitled to qualified immunity for a violation under § 1983, a court must engage in a two-step analysis: First, viewing the evidence in a light most favorable to the plaintiff, does the defendant's conduct violate the plaintiff's constitutional rights; and if so, then second, were the defendant's actions objectively unreasonable in light of clearly established law at the time of the conduct in question. *See Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).  Further, the individual defendants' conduct must be examined for purposes of qualified immunity.  *See Hernandez v. Tex. Dep't of Protective & Reg.*

*Servs.*, 380 F.3d 872, 883-84 (5th Cir. 2004); *see also Kitchen v. Dallas County, Tex.*, 759 F.3d 468, 478 (5th Cir. 2014).

At the first step, even if the plaintiff's pleadings adequately allege a violation of clearly established law, the defendant is nevertheless entitled to summary judgment if the plaintiff failed to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.  *See Mitchell v. Forsythe*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985).  In order to meet his burden to overcome the defense of qualified immunity at the second step, a plaintiff must show a violation of "clearly established law of which a reasonable person would have known."  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). The Fifth Circuit "do[es] not require that an official demonstrate that he did not violate clearly established federal rights; [its] precedent places that burden upon plaintiffs."  *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001).  Such a showing "generally turns on the objective reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken."  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992) (internal citations and quotations omitted; citing to and quoting from *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034 (1987)).

The Supreme Court has recently further instructed on the issue of clearly established law in the context of qualified immunity by stating that "[w]e have repeatedly told courts . . . not to define clearly established law at a high level of generality."  *See Mullenix v. Luna*, 136 S.Ct. 305, 308-09 (2015) (internal citations omitted).  Rather, the correct inquiry is "whether the violative nature of the *particular* conduct is clearly established."  *Id*.  This inquiry must be undertaken in light of the specific context of each case, not as a broad general proposition.  *Id*.

To simplify the qualified immunity analysis at the second step, it is helpful to understand

this step as involving "two separate inquiries: whether the . . . rights [claimed to have been violated] were clearly established at the time of the incident; and, if so, whether [defendant's] conduct . . . was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth, Miss. (Hare III)*, 135 F.3d 320, 325 (5th Cir. 1998). Both clearly established law and objective reasonableness are legal issues that may be properly determined by a court on a summary judgment motion. *White*, 959 F.2d at 544 (clearly established law); *Gonzales v. Dallas County, Tex.*, 249 F.3d 406, 411 and n. 4 (5th Cir. 2001 (objective reasonableness)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir.2009) (quoting *Saucier*, 533 U.S. at 202).

Regarding "clearly established law," the Fifth Circuit has stated,

> "To insure that qualified immunity serves its intended purpose, it is of paramount import, during step two, to define 'clearly established law' at the proper level of generality. 'Clearly established' means the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The defendant's acts are held to be objectively reasonable unless <u>all</u> reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff. The 'defendant's circumstances' includes facts know[n] to the defendant."

*See Thompson*, 245 F.3d at 457 (emphasis in original) (internal quotations and citations omitted) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034 (1987)); *see also, e.g.*, *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 407–08 (5th Cir. 2007) ("If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity.") (citing *Malley*, 475 U.S. at 341). Thus an official who has violated another's constitutional rights may still be eligible for qualified immunity, because qualified immunity at the second step "turns only on the <u>objective</u> reasonableness of the defendant's acts" and not on "a

particular defendant's subjective state of mind." *Thompson*, 245 F.3d at 457 (emphasis in original) (citing *Anderson*, 483 U.S. at 641); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir.2000); *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir.1997)).

After the Supreme Court's decision in *Pearson v. Callahan*, courts now have the discretion to decide whether to analyze both steps of this analysis in sequence, or whether it would be better, under the facts of the case, to proceed directly to the second step. *See Pearson v. Callahan*, 555 U.S. 223, 242, 129 S. Ct. 808 (2009) (over-ruling in part *Saucier*; only the mandatory sequential analysis requirement of *Saucier*); *AHF Cmty. Dev., LLC v. City of Dallas.*, 633 F.Supp.2d 287, 296 n. 7 (N.D.Tex.2009).  However, post-*Pearson*, the two steps are still applicable to the analysis, and if a court decides to analyze them sequentially, and determines that the alleged conduct did not violate a constitutional right, then the analysis does not proceed to the second step "because there is no constitutional violation for which the government official would need qualified immunity."  *Lytle*, 560 F.3d at 409-10.

If on a favorable view of the parties' submissions, however, the alleged conduct amounts to a constitutional violation, then a court proceeds to the actual "qualified immunity" analysis of the second step.  *See id.*  The relevant and dispositive inquiry under the second step, in determining whether a right is clearly established, is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 410 (citing *Saucier*, 533 U.S. at 202).  Even if the defendant's conduct violates a clearly established right, the defendant is nonetheless entitled to qualified immunity if his conduct was objectively reasonable.  *See Lukan v. North Forest I.S.D.*, 183 F.3d 342, 346 (5th Cir. 1999).  "Qualified immunity allows for officers to make reasonable mistakes about whether their conduct violates the law, and an officer's mistake is reasonable when there are insufficient indicia that the conduct in question was illegal."  *Lytle*, 560

F.3d at 410.  As the Supreme Court in *Saucier* noted, if the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.  *Saucier*, 533 U.S. at 202.  Summary judgment based on the second step is appropriate then "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful."  *Id*.  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id*.

### IV. ARGUMENT AND AUTHORITIES

#### A.  THE INDIVIDUAL OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL CLAIMS ASSERTED BY THE PLAINTIFF

##### 1.  THE COURT MUST DISREGARD THE PLAINTIFF'S VERSION OF THE FACTS IN LIGHT OF THE CLEAR AUDIO AND VIDEO EVIDENCE TO THE CONTRARY

Under a customary qualified immunity analysis, the court is charged to determine the relevant facts of the event in question.  *See Poole v. City of Shreveport*, 691 F.3d 630 (5th Cir. 2012).  Typically this would entail accepting the Plaintiff's version of the facts as pled; however, in this case, because the Plaintiff's version of the facts differs vastly from what the record of the incident depicts, the Court may accept the facts as presented by the Defendants and verified by the video and audio tape of the incident taken from Officer Lopez's patrol car and microphone.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Poole*, 691 F.3d at 631.  "When opposing stories tell two different stories, one of which is blatantly contradicted by the record such that no reasonable jury could believe it, the Court must not adopt that version of the facts for purposes of summary judgment."  *See Scott*, 550 U.S. at 380-81 (noting "a [court] need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the [record]"); *see also Poole*, 691 F.3d at 631.

The *Scott* decision does not limit the application to video evidence of the events in question, but rather on whether the facts alleged are clearly contradicted by the record, regardless of what evidence constitutes the record on summary judgment. *See Toner v. Village of Elkton*, No. 11-10835, 2012 WL 4748057 (E.D. MI Oct. 4, 2012) (noting that <u>audio accompanying a patrol car video sufficed to contradict the plaintiff's version of the facts in order for the court to accept the facts as set forth by the audio recording</u>); *see also Widder v. Texas A&M University—Corpus Christi*, No. 2:11-cv-282, 2012 WL 3776480 (S.D. Tex. July 31, 2012); *see also Marksmeier v. Davie*, No. 8:09-cv-30, 2009 WL 2396845 (D. Neb. July 30, 2009).

The Plaintiff's version of events, provided through her Second Amended Complaint and her sworn responses to written discovery notably indicated that she was not in imminent danger from any act of Jose Espinoza because she had been placed in the back of a patrol car *prior to the shooting*. *See* Pl.'s 2nd Am. Comp. (Doc. 24); *see also* App. Ex. M at 368-70 (Donahue Interrogatories to Plaintiff); *see* App. Ex. N at 385 (Pl.'s discovery responses to Donahue Interrogatories).[1]  This contention is clearly contradicted by the video which clearly shows she was not placed in the vehicle until *after the shooting*.  *See* App. Ex. P at 2:00 (Patrol Car Video). The video also clearly captures the numerous verbal commands given by the officers to attempt to disarm Jose Espinoza.  *See* App. Ex. P at 1:00-1:39 (Patrol Car Video).  As a result, the Court may accept the facts as set forth by the audio recording as true and ignore the Plaintiff's allegations for purposes of this Motion for Summary Judgment.

---

[1] The Plaintiff did not set forth the question before providing the answer in her interrogatory responses; therefore, referring back to the original interrogatory is necessary, and the interrogatories are being provided.

## 2. THE EXCESSIVE USE OF FORCE CLAIM FAILS

### A. NO CONSTITUTIONAL VIOLATION OCCURRED FOR THE ALLEGED EXCESSIVE USE OF FORCE

In order to succeed in the first step of the qualified immunity analysis on her claims for excessive use of force, the Plaintiff must show a violation of the Fourth Amendment prohibition against the use of excessive force by demonstrating that the force complained of was objectively unreasonable. *See Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015); *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (noting to prevail on an excessive use of force claim, a plaintiff must establish (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable). Reasonableness is determined by the facts of circumstances of each case, with consideration given to the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *See id.* The severity and immediacy of the threat of harm to officers are others are paramount to the reasonableness analysis. *See id.* Further, the reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision hindsight." *Id.* An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or others. *See id.*; *see also Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003).

The facts in the present case support a finding that there was no excessive use of force used by Officers Lopez, Donahue or Land. Officer Land did not use any amount of force during the incident in question. *See* App. Ex. F at 324-26 (Land Declaration). The Plaintiff has also acknowledged Police Chief Toney Cowan was not even present. *See* Pl.'s 2nd Am. Comp (Doc. 24). Further, the force used by Officers Lopez and Donahue was only used upon the reasonable

beliefs of both officers that Jose Espinoza was lunging toward Officer Donahue with a deadly weapon and therefore posed an immediate threat of serious bodily harm or death to Officer Donahue.  *See* App. Ex. E at 321-23 (Lopez Declaration); *see also* App. Ex. D at 317-20 (Donahue Declaration).  Moreover, when viewed in light of the totality of the circumstances confronting the officers, the use of force was not excessive as the officers arrived at the scene to a hysterical woman, a man covered in blood holding a knife, a struggle between the two in which officers thought the man was attempting to stab the woman, and, most notably, the actions taken by Jose Espinoza to change the position of the knife and raise it over his head in an attack position and then move toward the officer who was in close proximity to Jose Espinoza.  *See* App. Ex. O (911 call); *see also* App. Ex. P (Patrol Car Video); *see also* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration). Additionally, the Officers used multiple attempts at commands and instructions to diffuse the situation, but were faced with an individual who gave no sign of recognition to the commands and completely ignored officer requests to drop the weapon. *See* App. Ex. P at 1:00-1:39 (Patrol Car Video); *see* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration).

At the time the shooting occurred, Officer Donahue had positioned himself within five (5) feet of the male suspect standing below him on the ground level, below the porch where Jose Espinoza stood.  *See* App. Ex. D at 318-19 (Donahue Declaration).  The weather conditions caused the ground to be blanketed in snow and ice, leaving the Officers without proper traction on the ground during the incident.  *See* App. Ex. D at 317-19 (Donahue Declaration); *see* App. Ex. E at 321-22 (Lopez Declaration).   The blank, locked on stare of Jose Espinoza directed towards Officer Donahue, in combination with the repositioning and raising of the knife and the lunging motion made toward Officer Donahue would lead any reasonable police officer to the conclusion that Jose

Espinoza was moving to attack Officer Donahue with a knife from a higher position in poor weather conditions. Officers Donahue and Lopez were therefore left with no choice but to respond to the threat of deadly force posed to Officer Donahue by Jose Espinoza with the use of force necessary to protect Officer Donahue from death or serious bodily injury. Consequently, there was no excessive use of force employed by the Officers. Further, the use of force deployed by the Officers was not objectively unreasonable given the totality of the circumstances facing the Officers during the incident, including the reasonable belief that Jose Espinoza was moving to attack Officer Donahue with a deadly weapon.

### B.   ACTIONS TAKEN BY OFFICERS DONAHUE AND LOPEZ WERE REASONABLE IN LIGHT OF CLEARLY ESTABLISHED LAW

Even if the Court finds that a constitutional violation occurred or if the Court chooses to begin the qualified immunity analysis as the second stage, there can be no finding that the Officers' actions were unreasonable in light of clearly established law. *See Mullenix v. Luna*, 136 S.Ct. at 308. The actions taken by Officers Donahue, Lopez and Land were reasonable in light of clearly established law due to the following circumstances that confronted the Officers during this particular incident:

- Receipt of a frantic and chaotic 911 call. *See* App. Ex. O (911 audio).
- Arriving at the location of 911 call to find frantic woman running through streets. A male was visible on a porch holding a knife with blood on his clothes. *See* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration).
- Despite repeated and clear commands to drop the knife, no response of any kind was given by Jose Espinoza. *See* App. Ex. P at 1:00-1:39 (Patrol Car Video); *see* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration).
- Emilia Espinoza interjected herself into danger by running to Jose Espinoza and engaging in a struggle with him over the knife, thereby prohibiting the use of the K-9 unit. Jose Espinoza's movements during the struggle appeared to the officers to be consistent with attempts to stab Emilia Espinoza. *See* App. Ex. D at 317-20 (Donahue Declaration); *see* App. Ex. E at 321-22 (Lopez Declaration).
- After Emilia Espinoza escaped the struggle, Jose Espinoza repositioned the grip on the knife to an attack position over his head and then took a lunging step toward Officer Donahue from the higher position on the porch. *See* App. Ex. D at 317-20 (Donahue

Declaration); *see* App. Ex. E at 321-23 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration).

- Officer Donahue was located less than 5 feet away from Jose Espinoza as he took the lunging step off the porch toward him.  *See* App. Ex. D at 318-19 (Donahue Declaration); *see* App. Ex. E at 321-22 (Lopez Declaration).

Due to the specific circumstances faced by officers in this matter, the actions taken by Officers Lopez and Donahue in deploying deadly forced were reasonable due to the specific circumstances faced by the officers, including specifically the advancement made by Jose Espinoza toward Officer Donahue with the weapon held over his head.  The only reasonable conclusion by any law enforcement officer when taking into account the totality of the circumstances that faced the officers involved in this situation was that Jose Espinoza's actions were consistent with an attempt to attack Officer Donahue with a knife, and therefore required Officers Donahue and Lopez to use force, including deadly force, to respond to the actions taken by Jose Espinoza.  *See* App. Ex. L at 358-63 (Affidavit of Margo Frasier); *see* App. Ex. K at 352-57 (Resume of Margo Frasier).

Texas law further provides for the use of deadly force when and to the degree the officer reasonably believes the use of deadly force is immediately necessary pursuant to:

- Texas Penal Code Section 9.32.  Deadly force in defense of person.  A person is justified in using deadly force "to protect the actor against the other's use or attempted use of unlawful deadly force; or "to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery or aggravated robbery."  *See* TEX. PEN. CODE § 9.32(a)(2).
- Texas Penal Code Section 9.51.  Arrest and Search. "A peace officer is justified in using deadly force against another when and to the degree the peace officer reasonably believes the deadly force is immediately necessary to make an arrest, or to prevent escape after arrest, if the use of force would have been justified under Subsection (a) and: (1) the actor reasonably believes the conduct for which arrest is authorized included the use or attempted use of deadly force; or (2) the actor reasonably believes there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the actor or another if the arrest is delayed.  *See* TEX. PEN. CODE § 9.51(c).

Officer Donahue's use of deadly force was done under the reasonable belief that Jose Espinoza, in lunging toward him with a knife over his head in an attack position, was an attempt to cause death or serious bodily injury by Jose Espinoza against him.  *See* App. D at 317-20 (Donahue Declaration). This belief was reasonable in light of the circumstances facing Officer Donahue.  Further, Officer Lopez similarly believed that Jose Espinoza's actions in lunging toward Officer Donahue constituted the attempted use of deadly force by Jose Espinoza, leading to a substantial risk of death or serious bodily harm to Officer Donahue.  *See* App. Ex. E at 321-23 (Lopez Declaration).  Again, this belief was reasonable based upon the circumstances the officers encountered during the incident and did not violate clearly established law.

Margo Frasier, the former Sheriff of Travis County, Texas, and an attorney, has testified concerning the following points relating to the use of force at issue in this matter.  On this point she stated:

- There is no information in the record I have analyzed indicating that Espinosa's rights under the Fourth or Fourteenth Amendments to the United States Constitution were violated by Defendants or that the individual officers are not entitled to individual immunity.
- Given that officers had been informed that Plaintiff was extremely upset and screaming, the officers would have had, based on their training, a rational basis for their belief that Espinosa had committed the offense of family violence.
- When Donahue saw a knife in Espinosa's hand, Donahue, based on his training, Donahue had a rational basis for his belief that Espinosa posed an imminent danger to Donahue and the Plaintiff and acted reasonably in commanding Espinosa to drop the knife.
- Given Espinosa's refusal to drop the gun, Donahue, based on his training had a rational basis for his belief that Espinosa posed an imminent threat of serious bodily injury or death to Donahue, Plaintiff and the other officers.
- When Espinosa raised the knife and took a lunging step in the direction of Donahue, Donahue, based on his training had a rational basis for his belief that the use of deadly force was justified so as to protect Donahue, the Plaintiff, and the other officers from an imminent threat of serious bodily injury or death.

- When Espinosa raised the knife and took a lunging step in the direction of Donahue, Lopez, based on his training had a rational basis for his belief that the use of deadly force was justified so as to protect Donahue, the Plaintiff, and the other officers from an imminent threat of serious bodily injury or death.

- Given, at the time of the incident in question, the training and reported perceptions of the Donahue and Lopez, the steps they took in an attempt to get Espinosa to drop the weapon and the steps taken to detain and secure Espinosa were consistent with law enforcement training and procedures.

- In the exercise of his discretion, and based upon fairly standardized training on the basic tactical and legal considerations related to use of force by law enforcement officers in Texas, particularly a person who was believed to have committed family violence and was armed with a knife, an officer from another jurisdiction who had no involvement in this case, like the involved officers, could have reasonably and appropriately reached the same conclusion Donahue and Lopez did; that Espinosa' actions required Donahue and Lopez to use force, including deadly force, given the Espinosa' actions and the totality of the circumstances at the scene.

*See* App. Ex. L at 361-62 (Affidavit of Margo Frasier).

Because the specific circumstances in this matter clearly dictated the use of deadly force in response to the events of the incident and the actions taken by Jose Espinoza, there can be no finding that the actions taken by the officers were unreasonable in light of clearly established law. Consequently, Officers Donahue, Land and Lopez are entitled to qualified immunity from all claims arising out of the Plaintiff's allegations of the excessive use of force.

### 3.   THE PLAINTIFF'S SUPERVISORY LIABILITY CLAIMS FAIL

The Plaintiff has also asserted claims against the Chief of Police for the City of Levelland and Officer Ty Land for supervisory liability for the failure to train and supervise.[2]  A supervisor may only be held liable for the failure to train, supervise or discipline under § 1983 if (1) the

---

[2]The Plaintiff's claims against the Chief of Police were identified in the body of her Second Amended Complaint as against Gregg Stevens.  As previously noted to the Court, Gregg Stevens is not the Chief of Police for the City of Levelland.  He has not been served with this lawsuit and is not represented by the undersigned counsel.  This Motion for Summary Judgment is brought by Toney Cowan, as the Chief of Police of the City of Levelland, who was served with notice of this lawsuit.   The Defendants presume that claims asserted against Gregg Stevens were intended to have been asserted against Chief Toney Cowan.  The Plaintiff has also asserted the failure to train claims against the City of Levelland as a *Monell* claim.

supervisor either failed to supervise, train or discipline a subordinate official, (2) a causal link exists between the failure to train or supervise and the violation of the Plaintiff's rights and (3) the failure to train or supervise amounts to deliberate indifference. *See Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011); *see also Snow v. City of El Paso, Tex.*, 501 F.Supp.2d 826, n. 5 (W.D. Tex. 2006); *see also Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). A key element in this inquiry is deliberate indifference on behalf of the supervisor. *See Porter*, 659 F.3d at 447. Further, for liability to attach based on a claim of inadequate training, the Plaintiff must allege with specificity how a particular training program is defective. *See Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). The Fifth Circuit has routinely held that when officers have received the minimum training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate. *See Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). The Plaintiff cannot meet this burden.

### A.   NO VIOLATIONS FOR THE FAILURE TO TRAIN OR SUPERVISE WERE COMMITTED BY POLICE CHIEF TONEY COWAN OR OFFICER LAND

The Plaintiff can set forth no competent summary judgment evidence that the Officers of the City of Levelland Police Department were inadequately trained, or if there was a failure to train, that it amounted to deliberate indifference. All of the Defendant Officers received the minimum training required by Texas law and implemented by the Texas Commission on Law Enforcement ("TCOLE"). *See* App. Ex. L at 361-62 (Affidavit of Margo Frasier). Further, the training and supervision provided by the City of Levelland Police Department was in compliance with state law and therefore adequate regarding the use of force. *See* App. Ex. L 361-62 (Affidavit of Margo Frasier).

All officers employed by the City of Levelland Police Department were required to meet the basic requirements for a peace officer instituted by TCOLE. *See* App. Ex. C at 313-16 (Cowan

Declaration).  Additionally, the Plaintiff has not alleged that the minimum training required by

TCOLE was inadequate.  The Fifth Circuit has routinely held that when officers have received the

minimum training required by Texas law, the plaintiff must show that the legal minimum of

training was inadequate.  *See Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).

The Plaintiff has not met this burden.  Further, each of the Officers underwent a training program

within the City of Levelland Police Department that included training on a myriad of topics,

including the use of force and crisis intervention focused on interactions with mentally ill

individuals.  *See* App. Ex. G at 327-32 (Cowan TCOLE); *see* App. Ex. H at 333-37 (Donahue

TCOLE); *see* App. Ex. I at 338-44 (Lopez TCOLE); *see* App. Ex. J at 345-51 (Land TCOLE); *see*

App. Ex. C at 313-16 (Cowan Declaration); *see* App. Ex. D at 317-20 (Donahue Declaration); *see*

App. Ex. E at 321-23 (Lopez Declaration); *see* App. Ex. F at 324-26 (Land Declaration); *see* App.

Ex. A at 164-170 (Policy Manual); *see* App. Ex. B at 263-64 (Field Training Manual).

     Margo Frasier testified concerning the following points relating to the training and

supervision of officers within the City of Levelland Police Department.  On this point she stated:

- There is no evidence to indicate that the employees of the Levelland Police Department were inadequately trained.  Particularly, there is no evidence that any failure to train the employees, if any failure did exist, amounted to deliberate indifference on the part of any policymaker for the City of Levelland.  In fact, the evidence is to the contrary. All of the employees met the requirements for training for the State of Texas as outlined by TCOLE standards.
- At the time of the incident in question, there was nothing to put the City of Levelland on notice that its employees were inadequately trained; much less plainly incompetent. To the contrary, the employees of the City of Levelland met all of the requirements for training as mandated by TCOLE.

*See* App. Ex. L at 361-62 (Affidavit of Margo Frasier).

     There was further no other incidents regarding the use of force or complaints received

regarding the use of force to put the supervisor officers on notice that any employees were

inadequately trained, much less plainly incompetent, in the use of force including the use of deadly force.  *See* App. Ex. F at 324-26 (Land Declaration); *see* App. Ex. C at 313-16 (Cowan Declaration).  Because there were no similar incidents or complaints involving the alleged use of force by any City of Levelland police officers, the Plaintiff cannot meet her burden to establish that either Chief Toney Cowan or Officer Land acted with deliberate indifference in regard to the training of officers within the City of Levelland Police Department.

Consequently, because the Plaintiff cannot establish that a violation for the failure to train occurred by Chief Toney Cowan or Officer Ty Land, both are entitled to qualified immunity for the failure to train claims asserted against them.

### B.    ADEQUATE SUPERVISION OCCURRED THROUGH A CHAIN OF COMMAND STRUCTURE

Adequate supervision was also provided through the chain of command structure implemented by the City of Levelland Police Department.  Officers are supervised on shift by a supervising officer, who is supervised by other higher ranking officers within the department, ultimately ending with the Chief of Police.  Adequate supervision was provided by both Officer Ty Land, as the shift supervisor on the date of the incident with Jose Espinoza, and Police Chief Toney Cowan through the training and command structure provided within the Department. Neither Chief Cowan nor Officer Land were aware of any deficiency in the supervision of officers within the City of Levelland Police Department.  *See* App. Ex. C at 313-16 (Cowan Declaration); *see* App. Ex. F at 324-26 (Land Declaration).  Moreover, neither Chief Cowan nor Officer Land had received any complaints regarding the supervision of officers within the City of Levelland Police Department. *See* App. Ex. C at 313-16 (Cowan Declaration); *see* App. Ex. F at 324-26 (Land Declaration).

### C. EVEN IF THE COURT DETERMINES A CONSTITUTIONAL VIOLATION OCCURRED FOR THE FAILURE TO TRAIN OR SUPERVISE, BOTH CHIEF COWAN AND OFFICER LAND WERE REASONABLE

Even assuming the Court does find a constitutional violation by Officer Land or Chief Cowan for the failure to train or supervise, there can be no finding that either acted unreasonably in light of clearly established law in regard to the training and supervision provided to the City of Levelland Police Officers.  Neither Officer Land nor Chief Cowan was aware of any prior incidents involving the alleged excessive use of force that would have put them on notice of a deficiency in the training provided to City of Levelland Police Officers.  Further, both ensured that all officers under their supervision were in compliance with all TCOLE training requirements and stayed current on additional training as necessary.  *See* App. Ex. C at 313-16 (Cowan Declaration); *see* App. Ex. F at 324-26 (Land Declaration).  Moreover, none of the officers involved in this incident had any prior history of the excessive use of force that would have put Officer Land or Chief Cowan on notice of a specific issue or pattern of conduct that needed to be addressed with any individual officer.  *See* App. Ex. C at 313-16 (Cowan Declaration); *see* App. Ex. F at 324-26 (Land Declaration).  Consequently, no reasonable officer would have reason to know the conduct of Officer Land or Chief Cowan violated clearly established law.  As a result, both Officer Land and Chief Cowan are entitled to qualified immunity for the supervisory liability claims asserted against them by the Plaintiff.

### V. CONCLUSION

For the reasons stated above, Defendants Raul Ortega Lopez, Jordan Kase Donahue, Justin Ty Land and Chief of Police Toney Cowan have shown themselves to be entitled to the defense of qualified immunity on all of Plaintiff's claims against them in their individual capacity.

WHEREFORE, PREMISES CONSIDERED, Defendants Raul Ortega Lopez, Jordan Kase Donahue, Justin Ty Land and Chief of Police Toney Cowan respectfully pray that the Court grant this Motion for Summary Judgment Based on Qualified Immunity.

Respectfully submitted,

/s/ Matt D. Matzner
MATT D. MATZNER
Texas Bar No. 00797022
TRACI D. SIEBENLIST
Texas Bar No. 24070517
CRENSHAW, DUPREE & MILAM, L.L.P.
Post Office Box 64479
Lubbock, Texas 79424
Telephone: (806) 762-5281
Facsimile: (806) 762-3510
mmatzner@cdmlaw.com
tsiebenlist@cdmlaw.com
**Counsel for Defendants**

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing was on this 22nd day of July, 2016 served as follows:

**VIA ECF**
Mr. Normando Pacheco
Law Offices of Pacheco and Wake
14201 East 4th Avenue, Suite 100
Aurora, CO 80011
pandwlaw@gmail.com
**Counsel for Plaintiff**

/s/ Matt D. Matzner
OF COUNSEL